AO 106 (Rev. 06/09)  Application for a Search Warrant

FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

FEB 2 5 2013

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| the property or premises of A. D. Michel Company, Inc., 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043, located within the Eastern District of Missouri - SEE ATTACHMENT A | ) ) ) ) | Case No.   4:13 MJ 5023 NAB |

## APPLICATION FOR A SEARCH WARRANT

I,  Michael E. Hampp                        , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

A. D. Michel Company, Inc., 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043

located in the ____ EASTERN ____ District of ____ MISSOURI ____ , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18:287 | False Claims |
| 18:1001 | False Statements |
| 18:1343 | Wire Fraud |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

❏ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael E. Hampp, Special Agent

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  February 25, 2013

_____
*Judge's signature*

City and state:  St. Louis, MO

Honorable Nannette A. Baker, U.S. Magistrate Judge
*Printed name and title*

AUSA:

<u>AFFIDAVIT IN SUPPORT OF AN</u>
<u>APPLICATION UNDER RULE 41 FOR A</u>
<u>WARRANT TO SEARCH AND SEIZE</u>

I, Michael E. Hampp, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the premises known as A. D. Michel

Company, Inc. (A.D. Michel Company), 2505 Metro Blvd., Suite C, Maryland Heights, MO

63043, further described in Attachment A, for the things described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Defense

(DoD), Office of Inspector General (OIG), Defense Criminal Investigative Service (DCIS),

Columbus, Ohio, and have been so employed for over 23 years.  Prior to my employment with

DCIS, I was employed as a Special Agent with the Ohio Attorney General, Bureau of Criminal

Identification and Investigation and the Consumer Frauds and Crimes Division for nine years.

For the past 23 years I have worked extensively on cases involving DoD contractors who

fraudulently sell and deliver non-conforming products to various DoD agencies.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all my knowledge about this matter.  This affidavit is

being submitted in support of an application for a search warrant for a business known as A. D.

Michel Company, Inc. (A.D. Michel Company), 2505 Metro Blvd., Suite C, Maryland Heights,

MO 63043; in order to obtain evidence of violations of Federal Law, specifically: Title 18,

United States Code, Sections 287 (False Claims); 1001 (False Statements); and 1343 (Wire

Fraud).

1

**PROBABLE CAUSE**

4.     According to DoD records obtained from the Defense Logistics Agency (DLA) Land & Maritime (L&M), formerly the Defense Supply Center Columbus (DSCC), Columbus, OH: A.D. Michel Company was incorporated in Missouri on December 18, 1985 and registered to do business with the DoD on October 1, 1987.  The business address listed for A.D. Michel Company is 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043.  The business was started in 1985 by the officers who own 100% of capital stock.  The officers are: Art Michel, President; Richard Wagner, Vice President; Dennis Hobbs, Vice President; and Fran Michel, Secretary/Treasurer.  A. D. Michel is a wholesaler of industrial equipment such as fittings, valves, and tubing.  The DoD points of contact listed by A.D. Michel Company on DoD documents are Art Michel, Ken Lonsberry, and Marci Summerfield.

5.     The DoD, through its various agencies, such as the DLA L&M, contracts with private individuals and companies for the supply of various items for component parts and end products to be used by members of the United States military. The DoD requires that all parts so purchased by them be in conformity with the required government specifications.  The DoD issues "Solicitations" electronically; then DoD contractors submits their quotes, electronically; then based on quotes received the DoD issues purchase orders to a specific contractor for specific required parts.   The contractor then submits an invoice to DoD, electronically, representing to DoD that the parts shipped to DoD met the required government specifications.  Upon receiving an invoice, the DoD, through Defense Finance and Accounting Service (DFAS), will issue electronic payment to the supplying contractor and retain a voucher as a record of the payment.

6.     On January 22, 2013, this investigation was initiated based on information received from DLA L&M Contracting Officer and Quality Assurance Specialist concerning A.D.

Michel Company supplying non-conforming parts to the DoD through DLA L&M purchase

orders issued to A.D. Michel Company.  The DLA L&M purchase orders listed the DoD

requirements for the parts to be supplied.  The orders listed the DoD approved Original

Equipment Manufacturers (OEMs) and their part numbers to be supplied; and/or the specific

military and/or commercial specifications to which the parts must comply.

       7.      This investigation concerns allegations that A.D. Michel Company, a DoD

contractor in the Eastern District of Missouri, knowingly and intentionally sold non-conforming

parts directly to the DoD through DLA L&M, whose mission is to procure parts and other items

for the military services and other DoD components. The investigation has presently determined

that A.D. Michel Company supplied a variety of parts that were manufactured by unauthorized

manufacturers and/or did not meet the specified military requirements and specifications as listed

in the purchase orders.  The parts involved are a variety of fittings including adapters, reducers,

nipples, tee, elbows, caps, and valves utilized on a variety of military weapon systems to include

aircraft, submarines, missiles, ships, vehicles, and the Navy Nuclear Program. The majority of

the parts are considered critical application items.  A critical application item is defined as an

item essential to weapon system performance or operation, or the preservation of life or safety of

operating personnel, as determined by military services.

       8.      DLA L&M Quality Assurance Specialist advised the affiant that from April 2012

through December 2012, 32 Product Quality Deficiency Reports (PQDRs) had been initiated

against A.D. Michel Company.  The PQDRs are complaints from military users of parts supplied

by A.D. Michel Company indicating the parts are non-conforming.  Based on several of the

initial PQDRs, DLA L&M Product Verification Office Quality Assurance Specialist began

inspecting parts supplied by A.D. Michel Company.

3

9.      DLA L&M Officials advised the affiant that fittings supplied by A.D. Michel

Company through 31 DLA L&M purchase orders were inspected/tested by DLA.  The fittings

were determined to be non-conforming due to either being unapproved substitutions and/or

defective.  A.D. Michel Company submitted quotes to the DoD for these 31 DLA L&M purchase

orders indicating they would supply the DOD approved OEM parts as listed the DoD

"Solicitations."  Based on A.D. Michel Company's quotes, DLA L&M issued these 31 purchase

orders to A.D. Michel Company to supply the DoD approved OEM parts as listed in the

Solicitations and in the Purchase Orders.

10.     The parts supplied to DoD by A.D. Michel Company were packaged with a label

on the outside of the package identifying the parts as the required OEM parts; however upon

opening the package, the parts inside were not produced by the approved manufacturers

specified, but were unapproved substitutions.  Below is a chart listing the purchase order,

national stock number, part, and purchase order date for the 31 purchase orders issued to A.D.

Michel Company, in which A.D. Michel Company supplied unapproved substituted parts:

| Purchase Order | National Stock Number | Part | Date of PO |
|---|---|---|---|
| SPM7M2-12-V-0531 | 4730-01-047-5987 | TUBE TO HOSE ADAPTER | 12/12/2011 |
| SPM7M3-12-V-0444 | 4730-00-239-0189 | PIPE TO TUBE STRAIGHT ADAPTER | 1/1/2011 |
| SPM7M5-12-V-1731 | 4820-01-140-0004 | CHECK VALVE | 2/9/2012 |
| SPM7M2-11-V-2066 | 4730-01-047-5987 | ADAPTER | 5/27/2011 |
| SPM7M2-12-V-1019 | 4730-00-950-0087 | ADAPTER | 2/23/2012 |
| SPM7M2-12-V-0712 | 4730-01-138-1968 | PLUG | 1/6/2012 |
| SPM7M2-12-V-2226 | 4730-01-312-9223 | NIPPLE | 6/14/2012 |
| SPM7M2-11-V-1910 | 4730-01-365-7890 | ADAPTER | 5/9/2011 |
| SPM7M3-11-M-2397 | 4730-00-239-0189 | ADAPTER | 2/4/2011 |
| SPM7M2-12-M-5848 | 4730-01-312-9223 | NIPPLE | 8/20/2012 |
| SPM7L4-12-V-0438 | 4730-01-578-5375 | TEE | 10/20/2011 |
| SPM7M3-11-V-3646 | 4730-21-914-8647 | ELBOW | 5/27/2011 |
| SPM7MC-12-V-3345 | 4730-01-517-1524 | REDUCER | 2/23/2012 |

4

| SPM7L3-13-M-0854 | 4730-01-583-4555 | ADAPTER | 11/16/2012 |
| SPM7M1-11-M-VQ44 | 4730-01-488-4841 | REDUCER | 9/23/2011 |
| SPM7M3-11-V-2078 | 4730-01-274-1839 | ADAPTER | 2/11/2011 |
| SPM7M1-11-V-C254 | 4730-01-274-1839 | ADAPTER | 2/12/2011 |
| SPM7M3-11-V-2175 | 4730-01-317-5305 | CAP | 2/18/2011 |
| SPM7M2-11-V-1742 | 4730-01-398-8518 | NIPPLE | 4/20/2011 |
| SPM7M2-11-V-0043 | 4730-01-398-8518 | NIPPLE | 10/1/2010 |
| SPM7M3-12-V-1981 | 4730-01-373-0099 | ADAPTER | 2/10/2012 |
| SPM7M2-11-V-1659 | 4730-00-950-0087 | STRAIGHT TUBE TO BOSS ADAPTER | 4/1/2011 |
| SPM7M3-11-V-3450 | 4730-01-251-5660 | PIPE TO TUBE ELBOW | 5/19/2011 |
| SPM7M3-11-V-5820 | 4730-01-283-4951 | TUBE NIPPLE | 8/30/2011 |
| SPM7M5-12-V-2014 | 4820-01-140-0004 | CHECK VALVE | 3/1/2012 |
| SPM7M3-12-V-3341 | 4730-01-361-0503 | PIPE REDUCER | 4/16/2012 |
| SPM7M3-11-V-4871 | 4730-01-248-1633 | STRAIGHT ADAPTER | 7/21/2011 |
| SPM7M3-11-V-0847 | 4730-01-248-1633 | STRAIGHT ADAPTER | 11/19/2010 |
| SPM7M3-12-V-4130 | 4730-01-231-2756 | PIPE TEE | 5/22/2012 |
| SPM7M3-11-V-1386 | 4730-01-361-0503 | PIPE REDUCER | 12/23/2010 |
| SPM7M3-11-V-2835 | 4730-01-268-3267 | STRAIGHT ADAPTER | 4/19/2011 |

11.     DLA L&M Contracting Representative requested proof of traceability (documents such as purchase orders, and invoices to and from the approved OEMs or a distributor showing the required OEM parts will or have been purchased) from A.D. Michel Company for DLA L&M purchase order SPM7M2-11-V-2368, to show they had supplied the required OEM parts. On November 5, 2012, DLA Contracting Officer sent a request for traceability via email to Arthur Michel, A.D. Michel Company.  On November 9, 2012, Arthur Michel responded by email indicating he was out of town and would try to address the issue while he was away.  On November 26, 2012, DLA Contracting Officer sent a second email to Arthur Michel requesting the documents.  To date, no response or documents have been provided by A.D. Michel Company.

12.     According to DLA L&M documents on all the above listed purchase orders, Arthur D. Michel, A.D. Michel Company, using email address: amichel@admichel.com

5

submitted quotes and corresponded with DLA L&M electronically. A.D. Michel Company

employees also correspond with DLA L&M officials electronically through emails.

13.     The DoD Quality Assurance Representative (QAR), Defense Contract

Management Agency (DCMA) assigned to A.D. Michel Company advised that he goes to A.D.

Michel Company to inspect parts only when they contact him and not very often. He advised

that A.D. Michel Company is a distributor, and they do not manufacturer any parts. He advised

that most of the parts A.D. Michel Company supplies to the DoD do not require his inspection.

He advised the last time he was at A.D. Michel Company was on February 20, 2013. He advised

that A.D. Michel Company's facility, located at 2505 Metro Blvd., Suite C, Maryland Heights,

MO 63043, is the location where he performs his inspections and he is not aware of any other

facility locations for this company. He advised that an A.D. Michel Company representative

contacts him usually through email, sometimes by telephone, to arrange for his inspections.

When he arrives at A.D. Michel Company he enters through the receptionist area and is escorted

back through a hallway to the warehouse area. He advised he saw a computer on the receptionist

desk and one in the warehouse area. He advised there are probably additional computers in the

individual offices, but he is not permitted access to these offices. He advised there are filing

cabinets in the warehouse area. He said when he performs his inspections, it involves his review

of A.D. Michel Company's documents concerning the parts they will be supplying to the DoD.

These documents are always available for his review at A.D. Michel Company's facility, located

at 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043.

14.     DoD officials advised the affiant that all DoD contractors must be registered in

the Central Contractor Registration (CCR) and agree to receive payments electronically; these

invoices cause payments from the DoD to be issued to the contractors via Electronic Funds

Transfer. The DoD, through its agency, the Defense Finance and Accounting Service (DFAS),

Columbus, Ohio, Southern District of Ohio, received invoices electronically from A.D. Michel Company; processed the invoices, and issued payments to A.D. Michel Company electronically into their bank account in Missouri for the purchase orders; and retained a voucher as a record of the payment issued.

15.     Based on my training, experience and knowledge of this investigation, I am aware that Government contractors like A.D. Michel Company are required to keep all purchasing records, manufacturing documents, inspection documents, and certifications used to manufacture and/or procure parts sold to the DoD for four years from the date of final payment. These records may be in hard copy form or stored electronically on computers.  A.D. Michel Company's business address as listed on all Government documents such as Business Identification Number Cross Reference System (BINCS), the CCR, and the Dunn & Bradstreet is listed as 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043.  No other address was found for A.D. Michel Company.  Based on over 23 years of experience in investigating DoD fraud cases; knowing that DoD contractors are required to maintain their records for four years from final payments; that these records are kept at their business location since they need to have access to the records on a regular basis; and that the records are kept in both hardcopy and electronically on their computers; your affiant believes that A.D. Michel Company's business records and parts as listed in Attachment B, or a lack of records, are kept at their business location; and will show that A.D. Michel Company knew they were supplying substituted/non-conforming parts to the DoD.


## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

16.     A review of DoD records and correspondence with DoD officials revealed that A.D. Michel Company correspond electronically through the internet (global network of computers and other electronic devices that communicate with each other) with the DoD.  This

7

electronic communication involves emails, receiving DoD Solicitations, submitting quotes to the DoD, receiving DoD purchase orders, submitted invoices to the DoD, and receiving payment form the DoD.

17.     SA James E. Olmstead has been employed with the DCIS since 1994.  SA Olmstead is a DCIS Seized Computer Evidence Recovery Specialist (SCERS) and he was trained in computer forensics at the Federal Law Enforcement Training Center, Brunswick, Georgia.  SA Olmstead has received advanced training in the area of the execution of search warrants involving computers and related equipment, electronic data preservation, and the recovery, documentation, and authentication of computer evidence.  SA James Olmstead informed your affiant that conducting a search of a computer system, documenting the search, and making evidentiary and discovery copies is a lengthy process.  It is necessary to determine that no security devices are in place that could cause the destruction of evidence during the search; in some cases it is impossible even to conduct the search without expert technical assistance.  Since computer evidence may be extremely vulnerable to tampering or to destruction through error, electrical outages, and other causes, removal of the system from the premises will assist in retrieving the records authorized to be seized, while avoiding accidental destruction or deliberate alteration of the records.

18.     SA Olmstead also stated that whether records are stored electronically or on a hard drive or otherwise, even when they purportedly have been erased or deleted, they may still be retrievable.  SA Olmstead is familiar with the methods of restoring lost data commonly employed by computer users, and has used those methods himself.  He stated that should such data retrieval be necessary, it is time consuming.

19.     SA Olmstead stated the accompanying software must also be seized, since it may be impossible without examination to determine that it is standard, commercially available

software.  It is necessary to have the software used to create data files and records in order to read the files and records.  In addition, without examination, it is impossible to determine that the any electronic media purporting to contain a standard commercially available software program has not been used to store records instead.

20.     SA Olmstead informed your affiant that the system documentation, instruction manuals, and software manuals are also necessary to properly operate the specific system in order to accurately obtain and copy the records authorized to be seized.

21.     Based upon SA Olmstead's training and experience, he advised that in order to completely and accurately retrieve data maintained in computer hardware or on computer software, to insure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is often necessary that the computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such a computer be seized and subsequently processed by a qualified computer specialist in a laboratory setting.  This is true because of the following:

a.     *The volume of evidence*.  Computer storage devices (such as hard drives, tapes, USB devices and other storage devices, etc.) can store the equivalent of thousands of pages of information.  Additionally, a user may seek to conceal criminal evidence by storing it in random order with deceptive file names.  Searching authorities are thus required to examine all the stored data to determine which particular files is evidence of criminal activity.  This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis "on-site".

b.     *Technical requirements*.  Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled

9

environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications.

22.     Thus, it is difficult to know prior to the search which expert possesses sufficient specialized skills to best analyze the system and its data.  No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources and from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

23.     Based on the information set forth above, if a determination is made during the search that information contained in the computer system, and related computer equipment and storage devices, cannot be successfully retrieved and copied to depict the exact environment in which the data was created at the premises, your affiant seeks the authority to seize the following:

a.     Computer hardware, meaning any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data.  These devices include computers, computer components, computer peripherals, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drive, and other computer related electronic devices.

b.     Computer software, meaning any and all instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related component.  The items to be seized include operating systems, application software, utility programs, and other programs or software used to communicate

10

with computer hardware or peripherals either directly or indirectly via the internet, routers, telephone lines, or other means of transmission.

      c.      Instruction manuals, meaning any and all written or printed material which provides instructions or examples concerning the operation of a computer system, computer software, and/or any related device.

24.      If, after inspection of any seized computer equipment, the computer analysts determine that the items are no longer necessary to retrieve and preserve the evidence data, the government will return them within a reasonable time.

25.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

26.      I submit that this affidavit supports probable cause for a warrant to search A. D. Michel Company, Inc., 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043, described in Attachment A and seize the items described in Attachment B, all of which constitute evidence, fruits, and instrumentalities of violations of Sections 287, 1001, and 1343 of Title 18 of the United States Code.

### REQUEST FOR SEALING

27.     It is respectfully requested that this Court issue an order sealing, until further

order of the Court, all papers submitted in support of this application, including the application

and search warrant.  I believe that sealing this document is necessary because the items and

information to be seized are relevant to an ongoing investigation into the criminal organizations

as not all of the targets of this investigation will be searched at this time.  Based upon my

training and experience, I have learned that online criminals actively search for criminal

affidavits and search warrants via the Internet, and disseminate them to other online criminals as

they deem appropriate, i.e., post them publicly online through the carding forums.  Premature

disclosure of the contents of this affidavit and related documents may have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.


                                    Michael E. Hampp, Special Agent
                                    Defense Criminal Investigative Service



Subscribed and sworn to before me,
On February 25, 2013:


United States Magistrate Judge

# ATTACHMENT A

### THE SUBJECT PREMISES

A. D. Michel Company, Inc., is located at 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043.  The building is a single story red brick and cement block, with a glass front; and is approximately 8,500 square feet.  The numeric address is located on the northeast corner of the building.  A.D. Michel Company is located on the east side of the building with their name ("A.D. Michel Co.") located on the red brick and also on the glass front of their business, located next to the front entrance door.



# **ATTACHMENT B**

## ITEMS TO BE SEIZED

The following records and items dated from January 2009 to the current, from A. D. Michel Company, Inc. (A.D. Michel Company), 2505 Metro Blvd., Suite C, Maryland Heights, MO 63043, in the Eastern District of Missouri, to include, but are not limited to originals, photocopies, drafts, notes, parts, and computer records.  These records and items constitute evidence, fruits and instrumentalities of the violations of United States Code Title 18, Section 287 (False Claims), 1001 (False Statements), and 1343 (Wire Fraud).

The term "document(s)" means all written or printed matter of any kind, formal or informal, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, in the possession, custody or control of the company, wherever located, including, but not limited to, papers, correspondence, electronic mail, memoranda, notes, diaries, statistical materials, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, drawings, interoffice and intra-office communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, credit matters, computer printouts, hard drives, external storage devices, server, and personal computer data bases, teletypes, telefax materials, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any nature or kind of the foregoing and all graphic and aural records or representations of any kind, including, but not limited to,  sound recordings, motion pictures and any electronic, mechanical or electrical recordings or representations of any kind, including, but not limited to, tapes, cassettes, discs, recordings and films.

1.  Any and all documents relating or corresponding with Defense Logistics Agency (DLA) Land & Maritime (L&M), formerly called the Defense Supply Center Columbus (DSCC), Purchase Orders, National Stock Numbers, or Parts identified in the below chart  issued to A.D. Michel Company, to include but not limited to: request for quotations, quotes, purchase orders, solicitations, invoices, correspondences, inspections reports, certifications, drawings, notes testing records, receipts, memorandums, letters, diaries, work papers, ledgers, billing statements records of payments received or expended, and accounts receivable journals.

| Purchase Order | National Stock Number | Part | Date of PO |
|---|---|---|---|
| SPM7M2-12-V-0531 | 4730-01-047-5987 | TUBE TO HOSE ADAPTER | 12/12/2011 |
| SPM7M3-12-V-0444 | 4730-00-239-0189 | PIPE TO TUBE STRAIGHT ADAPTER | 1/1/2011 |

| SPM7M5-12-V-1731 | 4820-01-140-0004 | CHECK VALVE | 2/9/2012 |
| SPM7M2-11-V-2066 | 4730-01-047-5987 | ADAPTER | 5/27/2011 |
| SPM7M2-12-V-1019 | 4730-00-950-0087 | ADAPTER | 2/23/2012 |
| SPM7M2-12-V-0712 | 4730-01-138-1968 | PLUG | 1/6/2012 |
| SPM7M2-12-V-2226 | 4730-01-312-9223 | NIPPLE | 6/14/2012 |
| SPM7M2-11-V-1910 | 4730-01-365-7890 | ADAPTER | 5/9/2011 |
| SPM7M3-11-M-2397 | 4730-00-239-0189 | ADAPTER | 2/4/2011 |
| SPM7M2-12-M-5848 | 4730-01-312-9223 | NIPPLE | 8/20/2012 |
| SPM7L4-12-V-0438 | 4730-01-578-5375 | TEE | 10/20/2011 |
| SPM7M3-11-V-3646 | 4730-21-914-8647 | ELBOW | 5/27/2011 |
| SPM7MC-12-V-3345 | 4730-01-517-1524 | REDUCER | 2/23/2012 |
| SPM7L3-13-M-0854 | 4730-01-583-4555 | ADAPTER | 11/16/2012 |
| SPM7M1-11-M-VQ44 | 4730-01-488-4841 | REDUCER | 9/23/2011 |
| SPM7M3-11-V-2078 | 4730-01-274-1839 | ADAPTER | 2/11/2011 |
| SPM7M1-11-V-C254 | 4730-01-274-1839 | ADAPTER | 2/12/2011 |
| SPM7M3-11-V-2175 | 4730-01-317-5305 | CAP | 2/18/2011 |
| SPM7M2-11-V-1742 | 4730-01-398-8518 | NIPPLE | 4/20/2011 |
| SPM7M2-11-V-0043 | 4730-01-398-8518 | NIPPLE | 10/1/2010 |
| SPM7M3-12-V-1981 | 4730-01-373-0099 | ADAPTER | 2/10/2012 |
| SPM7M2-11-V-1659 | 4730-00-950-0087 | STRAIGHT TUBE TO BOSS ADAPTER | 4/1/2011 |
| SPM7M3-11-V-3450 | 4730-01-251-5660 | PIPE TO TUBE ELBOW | 5/19/2011 |
| SPM7M3-11-V-5820 | 4730-01-283-4951 | TUBE NIPPLE | 8/30/2011 |
| SPM7M5-12-V-2014 | 4820-01-140-0004 | CHECK VALVE | 3/1/2012 |
| SPM7M3-12-V-3341 | 4730-01-361-0503 | PIPE REDUCER | 4/16/2012 |
| SPM7M3-11-V-4871 | 4730-01-248-1633 | STRAIGHT ADAPTER | 7/21/2011 |
| SPM7M3-11-V-0847 | 4730-01-248-1633 | STRAIGHT ADAPTER | 11/19/2010 |
| SPM7M3-12-V-4130 | 4730-01-231-2756 | PIPE TEE | 5/22/2012 |
| SPM7M3-11-V-1386 | 4730-01-361-0503 | PIPE REDUCER | 12/23/2010 |
| SPM7M3-11-V-2835 | 4730-01-268-3267 | STRAIGHT ADAPTER | 4/19/2011 |

2.   Any and all documents concerning other purchase orders, not listed above, issued or awarded to A.D. Michel Company by the Department of Defense (DoD). Documents to include, but not limited to: request for quotations, quotes, purchase orders, solicitations, invoices, correspondences, inspections reports, certifications, drawings, notes testing records, receipts, memorandums, letters, diaries, work papers, ledgers, billing statements records of payments received or expended, and accounts receivable journals.

3.   Business Records which reflect documents of incorporation, partnership agreements, corporate meeting minutes, tax records and annual reports.

4.   Personnel and training records which reflect identity of officers and employees, home addresses and phone numbers, dates of employment and title and/or position.

5.   Documents which reflect special government acceptance to include cage code applications, pre-award survey documents, quality manuals, and correspondences with the DoD.

6.   Any and all records for business between A.D. Michel Company and their suppliers/distributors for items A.D. Michel Company supplied to the DoD to include, but not limited to: invoices, purchase orders, shipping records, bills of lading, receipts, notes, certifications, traceability and correspondences.

7.   Any remaining parts left in stock at A.D. Michel Company for the listed purchase orders or other purchase orders/contracts issued to A.D. Michel Company by the DoD.

8.   Any and all information and/or data, pertaining to records set forth above under numbers 1 through 7, inclusive, stored in the form of magnetic or electrical coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment.  This media includes, but is not limited to, hard drives, personal digital assistants (PDAs), compact flash cards, external media, removable hard disks, optical drives, recordable CD-roms, DVDs, tapes, and any other media which is capable of storing magnetic or optical data.

9.   Computer codes and programs, computer software, instructional manuals, operating instructions and sources of information manuals, operating instructions and sources of information, to the extent that they are necessary to extract and copy any of the information set forth above.

10.   If a determination is made during the search, by the Special Agent assigned the computer aspect of this search, that by extracting and copying information contained in the computer or computer system, and related computer equipment and storage devices, that the recreation of the exact computer environment at the premises being searched, cannot be assured in accordance with good evidence processing practices, the following items are included for seizure:

(a)   Computers and computer equipment, including processing unit and circuit boards, attached or unattached to the computer;

(b)   Magnetic storage media such as hard drives, and magnetic computer tape, and magnetic storage devices, such as read/write devices and read only devices, whether internal or external.

(c)   Photo optical storage media, including, but not limited to, compact disk type storage

devices which are forms of storage devices for computer readable information;

(d)  Computer peripheral devices attached or unattached to the computer, including computer monitors, printers, keyboards, routers, or other physical devices which serve to transmit or receive information to or from a computer;

(e)  Documents which serve the purpose of explaining the way the computer hardware, programs and data are used, including manuals for computer equipment and software, printouts of computer programs, data files or other information which have been or continue to be stored electronically or magnetically in a computer system; and

(f)  Memory telephones, automatic dialing devices, telephone answering machines, or any other electronic or digital used for the storage of names, addresses, and telephone numbers.